BELLE LOVETT et al., Appellees, v. W. J. WESTRIP et al., Appellants.

WILLS: Construction—Property Devised—General and Special Description—Effect. A *general* description of the property devised is not necessarily limited by a *special* description. A special description may perform no other function than to *emphasize* the general. Where a general description of property devised manifestly embraced two lots, *held,* an added special description did not limit the devise to one of the lots only.

*Appeal from Pottawattamie District Court.*—THOMAS AR-
THUR, Judge.

SATURDAY, MAY 12, 1917.

ACTION to construe a will. Decree for plaintiff in the
district court.—*Affirmed.*

*W. S. Baird,* for appellants.

*W. H. Killpack* and *F. E. Northrop,* for appellees.

WILLS: con-
struction: prop-
erty devised:
general and
special des-
cription:
effect.

GAYNOR, C. J.—This action involves the
construction of the third clause of a joint
will executed by John X. Baker and Har-
riet Baker, his wife, on the 21st day of Sep-
tember, 1899. The first paragraph of the
will recites that the property, both real and personal, is
owned jointly by the Bakers, husband and wife, and pro-
vides that the one surviving shall hold the same and have
the use and benefit thereof and the rents and profits there-
from during the period of his or her natural life. The
second paragraph provides for the payment of debts, last
sickness and burial expenses. The third paragraph, the
one in controversy, reads:

"After the death of survivor of us, as aforesaid, it is
our wish that the property on McPherson Avenue in the city
of Council Bluffs, Iowa, more particularly described as a
part of Lot 2 in Southeast Quarter, Northeast Quarter of
Section 30, Township 75 North, Range 43 West, which is
the homestead in which we now reside, together with build-
ing adjoining, should become the property of Belle Syfritt of
Kansas City, Missouri, daughter of our niece, Belle Burton,
during her life, and we do therefore devise the property
aforesaid to her, the said Belle Syfritt, for her use and
benefit during the period of her natural life, with remainder
at her death to her children. If she die without issue sur-

viving her, then remainder to our residuary legatees here-inafter named."

The fourth and fifth paragraphs make special bequests of $200 to certain beneficiaries named in these clauses. The sixth paragraph gives the rest and residue and remainder of the estate, real and personal, left after the death of the survivor, to W. J., J. H., and F. C. Westrip, of Council Bluffs, share and share alike in fee simple, to each an undivided one third.

It appears that, at the time this will was executed, the Bakers owned jointly the west 102 feet of Lot 2, described in the third paragraph of the will, and owned this at the time of the death of the survivor. Both the Bakers died some time prior to the commencement of this action. It appears that this property was situated on McPherson Avenue in the city of Council Bluffs; that the west 51 feet was purchased by the Bakers on August 15, 1892, from J. R. McPherson; that the east 51 feet was purchased July 22, 1893, from the same party. In the deeds, each part was described by metes and bounds. After the purchase of the west 51 feet, the Bakers erected a dwelling house thereon, and this house was occupied by John and Harriet as their homestead continuously until the death of each of them. There was also a barn erected on this homestead lot near the northeast corner, right up against the line, in dimensions 12 by 14 feet. There was also a woodshed, in dimensions about 8 by 10 feet. After the Bakers had completed this building on the west 51 feet, they continued to occupy it as a home until the death of Mrs. Baker in 1900, and Baker continued to occupy it until his death, about 1908. After the death of the first Mrs. Baker, Baker remarried, and occupied it as a home up to the time of his death.

The next year after the purchase of the east half, the Bakers erected a house on it, which they continued to rent. A fence divided the two pieces of ground, running north

and south. We herewith submit a plat of the property owned by the Bakers at the time of the making of the will, and at the time of the death of the survivor, situated on McPherson Avenue, and known as the west 102 feet of Lot 2, southeast quarter of northeast quarter of Section 30, etc., as described in the third clause of the will. McPherson Avenue runs east and west on the south side of this property. The property is all in one piece, except that there is a fence between the west half and the east half of the property. The Bakers owned other property, consisting of farm lands, which is not material to this controversy.

The contention of the plaintiff is that the entire property fronting on McPherson Avenue passed to her and

her son under the will. The plaintiff Belle Lovett is the same person as Belle Syfritt, named in this clause, and the other plaintiff is her son.

The defendants, the Westrips, claimed that only the portion occupied by the Bakers as a home passed to the plaintiff under the will. This brings us to a consideration of this clause.

It will be noted that the building occupied as a home on the west half, and the other building on the east half, are on the part of Lot 2 owned by the Bakers, on McPherson Avenue, at the time of the making of the will and at the time of the death. It will be noted from the wording of the will that the property on McPherson Avenue is given to Belle Syfritt during her life, with the remainder over to her children. If nothing further appeared, she would plainly be entitled to all of this property on McPherson Avenue, by the express wording of the will. It is claimed, however, that what follows this bequest, designated as a more particular description of the part of Lot 2, limits it to that portion occupied as a homestead, and it is claimed that this is all that was given to Belle Syfritt, and that the words, "together with the building adjoining," relate to buildings, and must be construed to relate to buildings upon the property devised. The Bakers owned the land described in this provision of the will. The part of Lot 2 owned by the Bakers was the west 102 feet of Lot 2. On this portion of Lot 2 owned by them were two buildings, one occupied as a home, and the other building, to the east, erected by the Bakers soon after they purchased the east half of this 102 feet. Both these buildings were dwelling houses, one on the west half of this part of Lot 2 on McPherson Avenue, and the other on the east half, on this part of Lot 2 on McPherson Avenue. The one on the west half was occupied as a home, and the one on the east half occupied by tenants.

It will be noted that the will says, "It is our wish that' the property on McPherson Avenue, in the city of Council Bluffs, pass to Belle Syfritt." That is to say, "more particularly described as a part of Lot 2, which is the homestead in which we now reside together, with the building adjoining, should become the property of Belle Syfritt.". We think it reasonably clear that, by this last description, it was the purpose of the testators to make more certain their intent to convey the entire property on McPherson Avenue to Belle Syfritt. They gave to her, by the express wording of this paragraph of the will, the property on McPherson Avenue, consisting of the west 102 feet of Lot 2. By the more particular description of it, they ·indicated that their intent was to devise that portion of the lot on which the home building in which they resided stood, together with the portion of the lot on which the other build-· ing adjoining it stood. We do not think this more particular description ought to be construed, or was intended to be understood, as limiting the general description, but rather as emphasizing the territorial extent of the bequest. Clearly, if they had stopped with the general description, and had said, "It is our wish that the property on McPherson Avenue, in the city of Council Bluffs, should become the property of Belle Syfritt," there could be no controversy here. That is, in fact, what they did say; but, in attempting to describe it more particularly, they must still have held in mind the original description, and emphasized that orig-. inal description by adverting to the fact that it was intended to include the homestead building in which they resided, together with the building adjoining, which stood, of course, upon the east half of the property covered by the first description.

We are not confined to the particular description, and not forced to base our conclusion on the thought that there was a gift of the building adjoining, and that this gift

carried the land with it, because, in our judgment, the general description carried the land, and the reference to the building was intended to more particularly emphasize the fact that the land on which they stood should pass, and to emphasize the fact that it was all intended to pass under the general description.

The contention of the defendant is that the more particular description limits the territorial extent of the bequest to that part actually occupied as a home, while the contention of the plaintiff is that this particular description neither enlarges nor abridges the original bequest, but emphasizes and particularizes the extent of the bequest. There is no occasion for our seeking technical definitions of the word "building," or of the word "adjoining." We take the language in its usual and ordinary sense. The building adjoining was a building on the portion of the lot adjoining, adjoining that portion occupied as a homestead. It would, it seems to us, be an unnatural interpretation of the wording to say that, by "the building adjoining," they referred to the barn and woodshed in the rear of the homestead property. The bequest of the homestead property, if that were all, would include buildings upon the land bequeathed, and these words would be entirely superfluous, if not entirely meaningless. The district court interpreted this to mean that the Bakers wished that all the property owned by them at the time of their death, on McPherson Avenue, in the city of Council Bluffs, should become the property of Belle Syfritt upon the death of the survivor, as therein indicated; that, by the more particular description, the testators intended to emphasize the fact that this bequest included the property then occupied by them as a home, together with the other property adjoining, on which a building had been erected. We think this does no violence to the language, and, to our minds, expresses the intent of the testators.

Some complaint is made of the action of the court in excluding testimony offered by appellant. A careful examination of this testimony satisfies us that no error was committed by the court in this respect.

It has been repeatedly held by this court that, in construing and interpreting wills, where there is no latent ambiguity in the will, the intent of the testator must be ascertained from the written instrument, and from that alone. His mind and purpose were expressed in the instrument, and it is the evidence to guide the court in determining what his mind and purpose were. We reach the conclusion that the court below is right, and the judgment is, therefore,—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur,